### Hermann v. Lampe.

(Decided April 18, 1917.)

## Appeal from Campbell Circuit Court.

1. **Municipal Corporations—Holding Other Office or Employment.—** The constitution makes all municipal offices incompatible with each other, regardless of their nature, but it does not make an employment for a municipality incompatible with a municipal office.

2. **Municipal Corporations—Holding Other Office or Employment—Incompatibility.—**Where one holding an office accepts another office or employment, which is incompatible with the one he already

has, it operates to vacate the first office, as provided by section 3774, Kentucky Statutes.

3. Municipal Corporations—Holding Other Office or Employment.— An employment is incompatible with an office when the multiplicity of the duties of the office and employment are such that an incumbent is unable to discharge the duties of both with care and ability, and, also, when there is a conflict in the interests of the public and the employer or the duties interfering with each other, a presumption is produced that the duties of both cannot be executed with impartiality and honesty.

4. Officers—Rights and Duties of—How Based—Employer and Employee.—The rights and duties pertaining to an officer are based upon and fixed by provisions of law, while the rights and duties of an employee are based upon and measured by his contract with his employer.

5. Officers—Vacancy—Election to Fill.—A vacancy in an office must exist before a valid election can be held to select an incumbent for the office.

6. Officers—Accepting Incompatible Office.—The acceptance of an incompatible office or employment is deemed a resignation of an office which one holds.

7. Officers—Vacancy in Office.—Where a statute provides that, upon the doing of a certain act a vacancy in an office is produced, the general rule is that the vacancy occurs upon the doing of the act, and no judicial determination is necessary to declare the vacancy. An exception to this rule exists where the claim of vacancy arises from misconduct of the incumbent of the office.

8. Officers—Vacancy in Office—Usurper.—One, who vacates an office by the acceptance of an incompatible office or employment and then continues in the first office, is a usurper, and may be ousted at the suit of the person who is entitled to the office.

9. Officers—Action to Recover Office.—Where an individual seeks to recover an office from one in possession of it, he must first show that he is lawfully entitled to fill the office before he can recover.

10. Officers—Eligibility—Certificate of Election.—A certificate of election is no evidence of the eligibility of one to hold an office, when his eligibility is denied in a direct proceeding against him.

11. Municipal Corporations—Commission Form of Government— Eligibility.—Under the commission form of government, in a city of the second class, one is not eligible to be either voted for or elected to the office of commissioner, unless he has first been nominated in the primary election provided for by the statute previous to the regular election, and his election to the office without such nomination does not give him any title to it, and he cannot recover it in an action in his own name from one who has no right to hold it.

L. J. CRAWFORD, JR., for appellant.

JAMES C. WRIGHT and GEORGE VEITH for appellee.

Opinion of the Court by Judge Hurt—Reversing.

This is an appeal from a judgment of the Campbell circuit court in a suit of the appellee, Fred H. J. Lampe, as plaintiff, against the appellant, Joseph G. Hermann, as defendant, and by which the answer of appellant in that action as amended was held insufficient on demurrer, and did not present a valid defense to the cause of action set out in the petition, and that the appellant was a usurper of the office of commissioner of the city of Newport and had been such since the 11th day of November, 1916, and that the appellee was the duly elected to and duly qualified commissioner of Newport for the term ending on the first Monday in January, 1918, and had been such officer since the 11th day of November, 1916, and ordered the appellant to surrender the office to the appellee.

The judgment resulted from a judgment of the court upon a general demurrer to the answer, as amended, and the appellant having declined to plead any further. Before answering the appellant interposed a general demurrer to the petition, which was overruled and to which judgment he excepted. The decision upon this appeal involves the soundness of the judgment of the court in overruling the demurrer to the petition as well as that to the answer, and it will be necessary to state, in substance, before proceeding to determine the legal questions involved, the substance of the petition and, also, that of the answer and its amendments.

On the 20th day of November, 1916, the appellee, by his petition, alleged, in substance, the facts necessary to show that he possessed the qualifications necessary to make him eligible to the office of commissioner for the city of Newport, and that at the election held in the city on the 7th day of November, 1916, he was duly and regularly elected to the office of commissioner of the city, for that portion of a term, which expired on the first Monday of January, 1918, and on the 11th day of November, 1916, the certificate of election was regularly issued to him by the board of election commissioners for the county, and the certificate was filed with the petition and made a part of it; that thereafter he executed bond, conditioned as required by law for such office, which bond was approved by the judge of the Campbell county court, on the 11th day of November, 1916, and filed in the office of the clerk of that court; that he took the necessary oaths provided by law for such officer; that at the time of his

election there was a vacancy in the office of commis- sioner, which had come about in the following way, namely: The appellant, Joseph G. Herman, at the election, held for officers for the city of Newport, on the 2nd day of November, 1915, had been elected to that office, for the term beginning on the first Monday in January, 1916, and ending on the first Monday of January, 1918, and had qualified to hold the office and accepted the same and entered upon its duties, and continued to rightfully perform them until the 27th day of January, 1916, when there being a vacancy in the office of city engineer for the city of Bellevue, the board of council of that city elected the appellant to the office of city engineer of that city to fill a vacancy in that office for a term of two years after that date, and on the 10th day of February, 1916, the appellant accepted the office of city engineer for the city of Bellevue and entered upon the discharge of the duties of that office, and has continued in their discharge from that date until the filing of the petition; that the office of commissioner for the city of Newport and that of city engineer for the city of Bellevue are incompatible offices and the appellant by accepting the office of engineer of Bellevue vacated the office of commissioner of Newport, and the office of commissioner remained vacant from the 10th day of February, 1916, until the election of appellee, which was on the 7th day of November, 1916, and on the 14th day of November, 1916, he demanded of appellant the possession of the office of commissioner to which he had been elected and the right to the emoluments of the office, but he refused to admit him to the office, and usurped same without right and remained in its possession. The relief sought was that the court should adjudge the appellant to be a usurper of the office of commissioner and that appellee was entitled lawfully to it and that appellant be required to surrender it to him. The appellant's demurrer to the petition was overruled and of this he complains, and urges as a reason for his contention that the court was in error, because the appellee failed in the petition to set out fully the circumstances of his election to the office. The appellee, however, alleged his age, citizenship and residence in the city of Newport; the fact that the office was vacant at the time of his election; his election regularly thereto; and the certificate of the board of election commissioners, certifying his election; his qualification and the refusal of the appellant to permit him to perform the duties of the office

and to receive its emoluments; the intrusion of the appellant into the office, and the reasons why the office was vacant at the time of his election. These allegations seem sufficient to support his cause of action and the demurrer was properly overruled. Wylie v. Thornton, 20 R. 1939.

The appellant, by his answer, traversed the appellee's election to the office of commissioner, at the time alleged or at any time, or that any vacancy had existed in the office of commissioner at the time of appellee's pretended election or previous thereto, or that there was any vacancy in the office of engineer for the city of Bellevue, or that appellant was elected thereto or accepted the office on the 10th day of February, 1916, or at any time, or that he had entered upon the discharge of the duties of the office of engineer for Bellevue or had continued therein for any time, or that there was any such office in existence as engineer for the city of Bellevue, or that he had vacated the office of commissioner by accepting the office of engineer of Bellevue on the 10th day of February, 1916, or at any time, or that he was a usurper of the office of commissioner or that plaintiff was entitled to it or any of its emoluments, and plead his want of sufficient knowledge to form a belief as to the performance of the acts by which the appellee claimed that he had qualified as commissioner after his election or at any time. He admitted that the board of election commissioners had issued and delivered to the appellee a certificate of election to the office of commissioner, but alleged that such certificate was void and of no effect.

By another paragraph, the appellant set out at length what he avers are the facts, with reference to the averment in the petition, that he was elected to and accepted the office of engineer of Bellevue, is based. Still, denying that he had been elected to or accepted or was performing the duties of the office of engineer of Bellevue, he alleged that Bellevue was a city of the fourth class; that the board of council of that city had never by ordinance or otherwise created the office of engineer for that municipality, and hence there was no such office as city engineer of Bellevue to which he could have been elected or which he could have accepted or the duties of which he could perform; that there had never been any ordinance adopted by the council of Bellevue creating the office of city engineer, prescribing its duties or fixing the salary of the incumbent of it or fixing the time for his election; and if such ordinance had been adopted, there

was no person who resided within the town, who was qualified for the duties of the office; that appellant was a civil engineer by profession; that it had been determined by the council of Bellevue to reconstruct Taylor avenue in that city, and that to do same it was necessary to employ an engineer to prepare the plans and specifications and to superintend the reconstruction; that the council, by a resolution, fixed the compensation of an engineer, which it might engage to do the work, and selected appellant for the employment; that he accepted the employment, to be continued for the period of two years, and executed a bond to faithfully perform his undertaking; that he declined to take the oath of office which the engineer would have been required to take, and the city attorney advised the council that it was not required to elect or have a city engineer, but could employ an engineer, who was not a resident of the city, to do specific work and to perform the work which was provided for by the council in its resolution and which appellant had agreed to do, and that appellant in accepting the offer to perform the service designated in the resolution for the compensation offered, became an employe of the city and not an officer of it; that in performing the engineering service for Bellevue, for which he had been employed, he had not neglected to perform any duty required of him as commissioner of Newport, and that it was not necessary to do so; that as commissioner of Newport he had kept his office during all the hours required by law; had attended all the meetings of the commissioners, except one, which he was prevented from attending on account of absence from the city, but upon business of the city; that the engineering work done by him for Bellevue, in no way, interfered with any duty of his, as commissioner; that the engineering has been done at times when there was no duty as commissioner to be performed; that during his incumbency of the office of commissioner, there has been neither negotiations nor business transactions of any character nor any conflict in the interest of the municipalities of Newport and Bellevue.

By another paragraph appellant plead that on the 11th day of October, 1916, the appellee filed his petition with the county clerk as an applicant to be placed on the ballot for nomination as a candidate for the office of commissioner at the primary election to be held in Newport on the third Saturday before the regular November election in that year, but that no primary election was held

nor polling places opened nor ballots printed for the primary and appellee was not nominated in any primary, but, without warrant of law, the appellee's name was placed on a separate ballot at the final election held on November 7, 1916, as a candidate for commissioner, and that such was the manner in which the appellee's claim of election to that office had been had.

By another paragraph it was alleged that no official action was taken with regard to the petition of appellee for a place on the ballot at the primary to be held for the nomination of candidates for commissioner, but that on October 25 and 27 thereafter a number of the signers of the petition filed with the clerk a withdrawal of their names from the petition, and that at the time the clerk of the county court caused the appellee's name to be printed upon the ballot as a candidate for commissioner at the final election, there were remaining only ninety-four names of voters signed to the petition, and for that reason that the placing of appellee's name upon the ballot was without warrant of law and void, and that his pretended election and the certificate issued to him of such election was a nullity.

By paragraph four of the answer, it was alleged that prior to the election held on November 7, 1916, appellant's right to the office of commissioner of the city of Newport had not been attacked or questioned in any direct proceeding, and that no adjudication by any court or finding by the board of commissioners had ever been had, by which it had been adjudged that he had forfeited the office of commissioner or that the office was then vacant or that he did not have a full legal title to it.

By another paragraph, appellant alleged the failure of the appellee to comply with the requirements of what is known as the Corrupt Practices Act.

To the answer as amended, the appellee interposed a general demurrer, which the court sustained, and the appellant declining to plead any further, the judgment was rendered from which the appeal is prosecuted.

(a) If the answer had contained nothing except the traverse, there would be no doubt of its sufficiency, as it puts squarely in issue the averments that appellant had been elected to and had accepted the office of city engineer of Bellevue, and that any vacancy had thereby been created in the office of commissioner of Newport, and that appellee had been elected to the office to fill the alleged vacancy. This denial, however, must be consid-

ered in connection with the averments of appellant in regard to his connection with the duties of city engineer of the city of Bellevue. Treating the averments in regard to his vacation of the office by the acceptance of an incompatible office or an employment, to be true, as we must in considering the demurrer, it must first be determined whether the alleged facts show a vacation of the office of commissioner by appellant and the creation of a vacancy, to which the appellee or any one could be lawfully elected. The appellant having been elected to and inducted into the office of commissioner and having continued in the office and in the performance of its duties, and the term for which he was elected, not yet having expired, a vacancy in the office has never existed, to fill which the appellee could have been elected, unless the appellant has vacated the office, in contemplation of law, by the acceptance of an incompatible office or employment, as provided by section 165 of the constitution, and by section 3774, Kentucky Statutes. It is admitted that appellant was duly elected to the office and duly qualified to perform its duties, and if he has done nothing to vacate or forfeit it, as a matter of course, he is entitled to hold it until the expiration of his term, and the election of appellee to fill a portion of appellant's term is necessarily a nullity and does not invest him with any right of action. So much of section 165, of the constitution, as is relevant to the matter in hand, is as follows:

" . . . and no person shall at the same time fill two municipal offices, either in the same or different municipalities. . . ."

Municipal offices are thus rendered incompatible by this constitutional provision, without reference to their nature. A previous provision of the section of the constitution, *supra,* renders an employe of a municipality ineligible to a state office or deputy state office or membership in the General Assembly, but it does not make an employment by a municipality incompatible with the holding of a municipal office. Hence, one, holding a municipal office and accepting employment of the same municipality or of another, does not thereby vacate his office, so far as the provision, *supra,* of the constitution provides. If there is such an office as engineer of the city of Bellevue, it is a municipal office, and the office of commissioner of Newport being a municipal office, under the plain terms of the constitution, they are incompatible with each other, and the same person cannot hold both,

although in their nature there was nothing, which, according to the principles of the common law, renders them incompatible. If such an office as engineer does not exist in Bellevue, as alleged by appellant, it seems that it would be impossible for him to forfeit and vacate his office of commissioner by being elected to or accepting, or holding an office, which does not exist and which has no duties. Cities of the fourth class, such as Bellevue, are not required by law to have a city engineer, but may have one, if its board of council desires. Section 3558, Kentucky Statutes, which is a part of the charter of cities of the fourth class, provides, that the board of council of such cities may elect such officer for a term of two years, after adopting an ordinance fixing the time for his election, his salary, and the duties of such office. Then, such office does not exist in such cities, until it is created by an ordinance of the council. The answer alleges that such an ordinance has never been adopted by the board of council of Bellevue. In Tennessee Paving Brick Co. v. Barker, etc., 22 R. 1069, it was held, that the board of council in cities of the fourth class was authorized, instead of creating the office of city engineer and electing an incumbent of the office and fixing his salary and duties, to employ an engineer for a particular work. Hence, the employment of appellant to do certain engineering work for the city, as alleged, does not create the office of city engineer, and his acceptance of such employment is not the acceptance of such office. The difference between an officer of a municipality and a mere employe of a municipality is marked. The existence of an office must rest upon a provision of law. The duties, powers and emoluments of an office rest upon and have life from the provisions of laws. The duties and powers of an incumbent of an office are regulated and created by the provisions of law. The incument of an office cannot enlarge or restrict the functions of his office by contract with the government. An employment arises out of a contract between the employe and the governing power. His duties, rights and emoluments are defined by the contract. 29 Cyc. 1366. While the board of council of Bellevue seems to have, at the first, proceeded upon the idea, that it was electing a city engineer, the appellant, according to his averments, did not accept that view of it and refused to accede to it, and when the arrangement between them was consummated, it seems, to have been accepted upon both sides, as a mere employment of appellant,

under a contract, to do certain engineering work for the city, for a compensation agreed upon. The office of commissioner of a city of the second class, such as Newport, under the commission form of government, is an office of legislative creation, and section 3744, Kentucky Statutes, provides:

"The acceptance by one in office of another office, or employments incompatible with the one he holds, shall operate to vacate the first."

Sections 3745 and 3746, Kentucky Statutes, declare a great number of offices to be incompatible with each other, but the office of commissioner of a city, under the commission form of government, and city engineer are not named nor declared to be incompatible. At the common law offices were not incompatible unless their functions were inconsistent. Section 3744, Kentucky Statutes, *supra,* provides, as will be observed, that the acceptance of an employment, which is incompatible with an office held by the acceptor of the employment, operates to vacate the office held by him. Hence, if the employment which appellant received from the city of Bellevue was incompatible with the office of a commissioner held by him, it had the same effect as the acceptance of an incompatible or forbidden office and wrought a vacation of his office. The legislature has not defined what character of employment shall be considered as incompatible with the functions of the office of commissioner, in question, and to determine what employment is incompatible with such an office recourse may be had to analogies drawn from the common law, as to what creates incompatibility of offices. It seems that employments would be incompatible with offices for the same reasons, to the extent that they exist, which would make one office incompatible with another. As before stated, at the common law an office was deemed incompatible with another when the functions of the two offices were inconsistent. In 29 Cyc. 1382, the text is:

"The inconsistency, which at common law makes offices incompatible, does not consist in the physical impossibility to discharge the duties of both offices; but rather in a conflict in interest, as where the incumbent of one office has the power to remove the incumbent of another, or to audit the accounts of another, or to exercise a supervision over another, as in the case of a judicial officer and his subordinate ministerial officer."

It has, however, been held, as in State v. Butt, 9 S. C. 156, that where it is physically impossible for one holding an office to perform the duties of another office, which he has accepted, that the offices are incompatible. In People v. Green, 46 Howard's Practice Reports 169, the court announced the following rule:

"Offices are said to be incompatible and inconsistent so as to be exercised by the same person: 1st. When from the multiplicity of business in them they can not be executed with care and ability; or, 2nd. When their being subordinate and interfering with each other, it induces a presumption that they can not be executed with impartiality and honesty."

This seems to be a sound rule to be adopted in determining whether an employment which one accepts is incompatible with the duties of an office which he holds. The answer alleges substantially, that the duties of the employment, which appellant received from the city of Bellevue, did not interfere with and was not inconsistent with the duties of the office of commissioner of Newport; that they were not subordinate to each other in a. way that would produce a presumption that the duties of both could not be executed with impartiality, and honesty, and further, that the multiplicity of business was not such that he could not execute both the functions of the office and the duties of the employment with care and ability. In the instant case, whether the employment was or is incompatible with the duties of the office of commissioner is one depending upon the facts of the case, and the averments of the answer with regard to the incompatibility of the office and the employment presents a defense to the cause of action stated in the petition and the court was in error in sustaining a demurrer to the paragraphs of the answer which set up such defense.

(b) The paragraph which pleads, that because the office of commissioner had never been declared to be vacant by a judicial determination, in a direct proceeding, against appellant, or by a proceeding upon notice to appellant by the mayor and commissioners, previous to the election claimed by appellee, the election of appellee was unauthorized and void and would not vest him with any title to the office, does not state a defense to the cause of action stated in the petition. A vacancy in the office, in fact, must have existed before a valid

election could be held to fill the vacancy, there is no doubt, as an election to provide an incumbent for an office, which is already filled by an incumbent, who was duly elected and qualified and rightfully exercising the duties of the office, is necessarily a nullity. The acceptance of an incompatible office by one holding an office is deemed to be a vacation and resignation of the office he holds. Taylor v. Commonwealth, 3 J. J. M. 401; Rodman v. Harcourt, Etc., 4 B. M. 224; Keating v. City of Covington, 18 R. 245; Johnson v. Sanders, 131 Ky. 537; Ferguson v. True, Etc., 3 Bush 255. The rule as stated in 29 Cyc. 1401, is:

"A vacancy in office for any of the causes enumerated in the statute occurs usually at the time of the happening of the event, whose occurrence, by the statute, is the cause of the vacancy, and no judicial determination, that a vacancy has occurred is necessary." Long v. Bowen, 94 Ky. 540; Bowen v. Long, 19 R. 1881. There is an exception to this rule, which is, where the vacancy is claimed to arise from the misconduct of the incumbent of the office, which works a forfeiture of it. Page v. Hardin, 8 B. M. 648; Todd v. Dunlap, 99 Ky. 460. An office is vacant in contemplation of law whenever it is not held by one who is legally qualified to do so, and who has a right to continue therein. State v. Harrison, 3 Am. State Reports 666, and cases there cited. By the statute, 3744, *supra,* it is expressly provided, that the acceptance by one in office of an incompatible office or employment, operates to vacate the office which he holds. True, one eligible and legally elected to and inducted into an office can not be ousted from it until the term expires for which he was elected, without having his day in court. The appointment or election of one to a vacant office, which is physically occupied by another who has no lawful right to hold it, or who has forfeited it, is not a judicial determination of the intruder's right of occupancy, but he is entitled to have his right determined in a court, which has jurisdiction to hear and determine his rights, and in a direct proceeding against him. Page v. Hardin, *supra;* Dallam v. Wilson, 53 Mich. 392; State v. Harrison, 113 Ind. 234. The instant action is such a direct proceeding. One who has vacated an office by the acceptance of an incompatible one, and who undertakes to exercise its functions is a usurper, as held by this court in Commonwealth, Etc.

v. Livingston, 171 Ky. 52. Section 486, Civil Code, provides as follows:

"A person who continues to exercise an office after having committed an act or omitted to do an act, the commission or omission of which by law creates a·for-feiture of his office, may be proceeded against for usurp-ation thereof."

Section 483, Civil Code, provides as follows:

"If a person usurp an office or franchise, the person entitled thereto or the Commonwealth may prevent the usurpation by an ordinary action."

Hence, under the allegations of the petition, the ap-pellee was entitled to maintain this action, although an action could have been maintained by the Attorney Gen-eral against the appellant for usurpation of the office, for the same reason alleged in the petition. The only difference between the two actions is, that, if instituted by the Attorney General, the burden would be upon the appellant to show his right to the office, while in the instant action, before the appellee is entitled to recover, he must show that he is legally entitled to the office. The case of Commonwealth, Etc. v. Livingston, 171 Ky. 52, does not hold a doctrine inconsistent with the views herein expressed. That opinion only held, that under the provisions of the statute governing the subject, the mayor and commissioners could not fill the office of com-missioner claimed to be vacant, from the incumbent hav-ing accepted an incompatible office, by an appointment to the vacancy, where the incumbent was performing the duties of the office, until they had given to the in-cumbent notice and a hearing and determined that a va-cancy existed. To deny the public the right to fill an office by election, when the incumbent has vacated it by accepting an incompatible office or employment, would probably, in many instances, deny them·all relief from such a situation.

(c) The paragraphs of the answer, which set up as a defense that appellee was not nominated for the office of commissioner in a primary election previous to the regular election and that the clerk of the county court placed his name upon the ballot at the regular election, basing his action upon a petition, which was signed by a less number than one hundred persons eligible to vote, and for those reasons he was not eligible to be voted for and was not elected as required by law, and hence had

no right to a certificate of election nor to hold the office, and hence no lawful right to succeed in the action, will be considered together. It has been consistently held, that where one, who claims the right to an office and to exercise its duties, seeks to recover it by an action, in his own name, from the possession of another, who is in the incumbency of it and performing its duties, that he must show a right in himself to the office before he can recover, although the incumbent of it is without lawful authority to hold it. Toney v. Harris, 85 Ky. 453; Wilson v. Tye, 126 Ky. 34; Tillman v. Otter, 93 Ky. 600; King v. Kahne, 27 R. 1080; Hoglan v. Carpenter, 4 Bush 89; Keating v. City of Covington, 18 R. 245. This principle is necessarily sound, because one who has no title to an office certainly has no superior right to its possession over another in the possession of it, although the possessor is without right. The contention, that appellee's certificate of election is conclusive evidence of his right to recover the office and precludes inquiry as to his eligibility and the validity of his election, is not tenable. While the certificate is conclusive of his election in any collateral proceeding, in which his title to the office might be involved, it has frequently been held that a certificate of election and the records showing that he has qualified to exercise the functions of the office, are not conclusive of the claimant's eligibility, when it is denied, in a direct proceeding against him, involving his right to exercise the duties of the office. Patterson v. Miller, 2 Met. 493; Hoglan v. Carpenter, *supra;* Dorain v. Walters, 132 Ky. 54. The direct proceeding here referred to is not such proceeding as arises under the statutes governing contested elections, because in those actions, the courts are not authorized to pass upon the eligibility of the claimants to the office, but the question of one's eligibility may be raised when he is the plaintiff in an action to recover an office from one alleged to be a usurper, and it may furthermore be shown that the election under which he claims the office was void, and hence, that he is without right. Toney v. Harris, *supra.* Subsection 6, of section 3235c, Ky. Statutes, which is a part of the charter of cities of the second class and with relation to the election of commissioners of such city, when they have adopted the commission form of government, is as follows:

"No person shall be elected without first having been nominated in the manner hereinafter prescribed. On the third Saturday before the day for the regular election there shall be held a primary election. Said primary election shall be conducted by the same officers chosen and acting in the same manner, with the same rights and duties as in the later regular election."

The statute then provides that each applicant, for nomination, shall, at least ten days before the day for said primary election, file with the county clerk a petition signed by at least one hundred voters requesting the placing of his name on the primary ballot, as an applicant for nomination. The form of the petition is likewise prescribed. The duties of the clerk with reference to the petition and election are specifically set out. The form of the ballot, the manner of the voting, the number of ballots to be delivered at each polling place, the persons entitled to vote, and the duties of the officers of the election are prescribed, and the requirement that the board of election commissioners shall canvass the returns and declare and publish the nominations of the successful applicants. Only the names of the nominees can be placed upon the ballots at the regular election or can be lawfully voted for. The statute is mandatory and declares that no one shall be elected to the office of commissioner except that he be first nominated in the manner provided by the statute. The plain terms of the statute render one ineligible to be elected a commissioner, except that he be first nominated in the primary. Without the declaration of the board of election commissioners of his nomination he is ineligible to be placed upon the ballot at the regular election. The intention of the legislature, by the statute controlling the election of commissioners, was, if a municipality so desired, to enable it to banish party considerations in the selection of its officers. The applicant for the nomination is not to be the candidate of any party. It is intended that all considerations, except the integrity and ability of the candidate to perform the duties of the office, should be eliminated in the selection. Regardless of his party tenets, each voter may cast a vote in the primary. The candidates receiving the greatest number of votes in the primary are nominated. Twice as many nominations may be made as there are commissionerships to be filled. At the regular election the

voters may again select between the candidates nomi-
nated. It is intended by this process of elimination to
enable the municipality to secure the most intelligent
and efficient government. To hold, that one could be
legally elected to a commissionership, without first hav-
ing received a nomination in the primary provided for,
would, in effect, nullify the requirements of the statute
and destroy the intended beneficial effects of the com-
mission form of government. It may be contended that
the statute does not provide for a primary held for the
purpose of making nominations of candidates for com-
missioner, except in years when municipal officers are to
be elected; that there was no authority for holding a
primary previous to the regular election in 1916. This
question was under consideration in Scott v. Singleton,
171 Ky. 117, and it was there held that the provision
in the charter, which provided that no municipal officer
could be voted for or elected, except such as are nomi-
nated at a regular primary, was tantamount to a pro-
vision, that a primary must be held to nominate such
officers whenever, under the provisions of the constitu-
tion, they should be elected. According to the conten-
tion of appellee, the vacancy in the office had existed
for more than three months previous to the regular elec-
tion in 1916, and hence, under the constitution, the va-
cancy, if it existed, was due to be filled by an election.
It is contended that as provided in subsection 9, of sec-
tion 1550, Kentucky Statutes, the appellee being the only
applicant for nomination at the primary, he was en-
titled to receive a certificate of nomination after the
expiration of the time for filing applications, and
that the holding of a primary was, therefore, un-
necessary. The subsection, *supra,* is one of the statute
which governs primary elections for the political part-
ies throughout the state, and by its provisions a lone
candidate for a nomination is entitled to a place on his
party ballot. This section is an amendment to the gen-
eral primary law by the act of 1914, which act expressly
provided that it should not be construed to repeal or in
any way affect the act providing for a commission form
of government in cities of the second class. Subsection
2, section 1550. The pleadings fail to show that the ap-
pellee was the only applicant for nomination at the pri-
mary, but if he had been so, under the provisions of the
statute, it would not have dispensed with the necessity

of his nomination in a primary. The paragraph under consideration, substantially alleges that he was not nominated, in that no primary was held for the purpose of making nominations for the office of commissioner. The legislative department of the government, which is authorized to prescribe the qualifications of municipal officers, has fixed one of the qualifications of a person eligible to be elected a commissioner, that he must first receive a nomination in a primary held for that purpose, and has restricted the choice of the people to the selection, by an election of a commissioner, to those who have first received nominations in a primary. Without such a nomination the election of any one to the office of commissioner was not authorized and void, and he would not be entitled to recover the office of another, although the other may be a usurper. It, therefore, appears that the court was in error in sustaining the demurrer to this paragraph of the answer.

With reference to the paragraph which plead that after the time for holding the primary, a sufficient number of voters, who had signed the nominating petition of appellee, withdrew their names so as to reduce the number below one hundred is not necessary to be discussed, since the clerk had no authority to declare the appellee a nominee or to place his name upon the ballot at the regular election, in the absence of his nomination by the primary, and hence, it is immaterial whether a sufficient number of signers were attached to the petition or not. The voters who had signed the petition would not be authorized to withdraw their names after the time had expired for the filing of petitions by applicants for nominations, but this petition was not one requesting that appellee's name be put upon the ballot as a candidate at the regular election, but it was to authorize the placing of his name upon the ballot at the primary as an applicant for the nomination.

It is not deemed necessary for a proper determination of this case to discuss the sufficiency of the paragraph which related to the effect of a failure to observe the Corrupt Practices Act, and no opinion is expressed thereon.

For the foregoing reasons the judgment is reversed and the cause remanded with directions to overrule the demurrer to the first, second and fifth paragraphs of the answer as amended by the first amended answer, and for other proceedings consistent with this opinion.